**The court incorporates by reference in this paragraph and adopts as the findings and analysis of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Dated: July 08 2009

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No.: 07-34934 |
| | ) | |
| Patrick L. Burns and | ) | Chapter 7 |
| Sandra I. Burns, | ) | |
| | ) | Adv. Pro. No. 08-3017 |
| Debtors. | ) | |
| | ) | Hon. Mary Ann Whipple |
| Michael S. Wegrzyn, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| Patrick L. Burns, et al., | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM OF DECISION

This adversary proceeding is before the court for decision after trial on Plaintiff Michael Wegrzyn's complaint to determine dischargeability of a debt allegedly owed to him by Defendants Patrick L. Burns and Sandra I. Burns, debtors in the underlying Chapter 7 case. Plaintiff alleges that the debt should be excepted from discharge under 11 U.S.C. § 523(a)(2)(A).

The district court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §1334(b)

as a civil proceeding arising in or related to a case under Title 11. This proceeding has been referred to this court by the district court under its general order of reference. 28 U.S.C. § 157(a); General Order 84-1 of the United States District Court for the Northern District of Ohio. Proceedings to determine dischargeability are core proceedings that the court may hear and decide. 28 U.S.C. § 157(b)(1) and (b)(2)(I).

This memorandum of decision constitutes the court's findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52, made applicable to this adversary proceeding by Fed. R. Bankr. P. 7052. Regardless of whether specifically referred to in this Memorandum of Decision, the court has examined the submitted materials, weighed the credibility of the witnesses, considered all of the evidence, and reviewed the entire record of the case. Based upon that review, and for the reasons discussed below, the court finds that Plaintiff is entitled to judgment in his favor against Defendant Patrick L. Burns in the amount of $7,140 but that Defendant Sandra I. Burns is entitled to judgment in her favor on the complaint. Although, in their answer, Defendants assert counterclaims for violation of the automatic stay and the Fair Debt Collections Practices Act, they did not pursue these claims at trial. As such, judgment will be entered in favor of Plaintiff and against Defendants on the counterclaims.

## **FINDINGS OF FACT**

Defendants were co-owners of real property located in Oregon, Ohio, that they purchased in 2002 and at which they operated a sports bar, Game Time Sports Pub ("Game Time"), until early 2008. Defendants and Plaintiff were acquaintances – they attended the same church, their children attended school together, and Plaintiff's family regularly dined at Game Time.

In early December 2006, Patrick Burns ("Burns") approached Plaintiff about installing a video security system at Game Time. In mid-December, Burns specifically explained to Plaintiff what he wanted installed and where he wanted cameras to be located. At that time, after Plaintiff provided an estimate of the cost to do so, he and Burns agreed that Plaintiff would install the requested security system. Burns agreed to pay Plaintiff on completion of the system being installed.

Plaintiff hired his son, Douglas Wegrzyn, and Terry Bobo to help him install the system on January 30, 2007. Bobo testified that installation of the video security system required installing fifteen camera mounts and cameras, running the necessary wiring for each camera, and installing the computer system. He further testified that the installation was completed that day and that the system was demonstrated to Burns and was in working order. At that time, Plaintiff prepared and handed to Burns a handwritten invoice for the equipment and installation showing a total amount due of $5,887. [Plf. Ex. 6]. Bobo testified that,

2

when handed the invoice, Burns did not comment on the amount. Although Sandra Burns testified that her husband had check writing authority, when Plaintiff asked Burns for payment, he responded that he would "order a check from the bank" and that it would take a couple of days.

At that time, Burns also requested that Plaintiff install additional equipment, including a flat screen computer monitor, two additional cameras, and a larger hard drive for the computer. Plaintiff told Burns that the cost would be approximately $1,000, and they agreed that Plaintiff would install the equipment the next day. On January 31, 2007, Plaintiff and Douglas Wegrzyn installed the additional equipment. After completing the installation, Plaintiff prepared an invoice showing $1,253 for the additional equipment and $7,140 as the total amount due for the entire system installed. [Plf. Ex. 7]. He handed the invoice, [*Id*.], to Burns and, again, Burns did not comment on the invoice amount. Burns told Plaintiff that he would "order a check from the bank."

Two or three days later, after not hearing from Burns during that time period, Plaintiff returned with his family to dine at Game Time. Plaintiff testified that he specifically chose that location for dinner so that he could pick up the check from Burns. Burns again did not voice any objection or complaint regarding the amount of the invoice. But rather than delivering a check, Burns informed Plaintiff that he was having financial problems and that he did not have the money to pay him. He told Plaintiff that he would have to go to the credit union to borrow the money. Although Burns had told Plaintiff that he applied for a loan at the credit union and that he had to wait for his application to go before a board for approval, according to Sandra Burns, their relationship with the credit union had been deteriorating at the time the security system was requested and, as a result, they did not apply for the loan.

There is a dispute as to the amount of the estimate initially provided by Plaintiff. According to Defendants, they were unable to pay the amount due to Plaintiff because the original invoice amount was more than twice Plaintiff's original estimate. Burns testified that he told Plaintiff that he had obtained an estimate of $2,000 from a third party and that Plaintiff told him he could beat that price. However, according to Plaintiff and Douglas Wegrzyn, who was present at the time the estimate was given, Plaintiff told Burns that he could install the requested security system for approximately $5,000. The court credits the testimony of Plaintiff and his son and finds that Burns's testimony on this issue is not credible.

The court finds most significant the fact that Burns offered no contemporaneous objection to the invoices submitted by Plaintiff. Defendants suggest that Burns did not object to the invoices at the time they were handed to him because Bobo was present when he was given the first invoice and Burns's son was

3

present when he was given the second invoice and Burns did not want to embarrass Plaintiff by raising an issue regarding a price discrepancy.  However, the court finds this explanation most unlikely given the magnitude of the alleged price discrepancy and the fact that, when presented with the first invoice for $5,887, Burns asked for *additional* equipment to be installed.  Plaintiff testified that he would not have installed the additional equipment if Burns had objected to the amount shown to be due on the first invoice.  In addition, there were several days after the installation was completed and before Plaintiff again approached him for payment during which Burns could have contacted Plaintiff to discuss any issue he had with the invoices.  Not only did Burns not contact Plaintiff during that time period, there is no testimony or evidence that he ever complained that the invoice was for an improper amount until after this adversary proceeding was commenced.  Moreover, the court finds it unlikely that Burns had obtained an estimate of $2,000 from a third party for a comparable system.  Bobo's unrebutted testimony is that a four-camera system was installed in his own home where he already had the necessary computer at a cost of slightly less than $1,000.  The initial system installed at Game Time consisted of fifteen cameras as well as a computer.

At the time the security system was installed, Defendants were in a distressed financial situation.  Burns testified that the business was struggling at that time.  Defendants' testimony reveals that their property taxes were delinquent at that time, as were payments relating to workers' compensation, unemployment compensation and sales taxes and that they had entered into "working agreements" with the various government agencies to address these obligations.  They were also negotiating with their bank regarding late mortgage payments.  There were several lawsuits against Burns relating to a former business that he owned, and at least one judgment lienor had commenced a foreclosure action against the Oregon property where Game Time was located.  According to Sandra Burns, Defendants had been advised by their attorney to stay current with local vendors who provided goods or services to the business on a daily basis so that they could continue to stay in business and, notwithstanding their numerous delinquencies relating to other obligations, they were paying these local vendors on a timely basis.

Although Sandra Burns testified that she was aware of the facts that a security system was to be installed at Game Time and that Plaintiff was to install it, there is no there testimony or evidence that she was aware of the extent of the system requested by Burns or the estimated cost of the system before it was actually installed. Nor is there any testimony or evidence that she was present on either January 30 or 31 during the installation,  when the invoices were presented to Burns and when the additional equipment was requested.

4

It is undisputed that Defendants never paid the invoices by either cash or check and never returned the security system components to Plaintiff. Defendants nevertheless testified that a "tab" or line-of-credit was set up by them at Game Time for use by Plaintiff and his family that was to be applied to what was owed to Plaintiff for the security system. Burns testified that Plaintiff's tab at the time the business closed was approximately $1,200. The court does not find this testimony credible. Defendants offer no documentation of any unpaid charges incurred by Plaintiff or his family at Game Time. The court credits Douglas Wegrzyn's testimony that when the Wegrzyn family dined at Game Time, his mother generally used her debit card to pay the bill and Plaintiff's testimony that such an account did not exist.

Defendants filed for Chapter 13 bankruptcy relief on November 13, 2007. Their case was converted to a Chapter 7 case on April 22, 2008, and Plaintiff timely commenced this adversary proceeding.

## LAW AND ANALYSIS

Plaintiff seeks a determination that the debt owed to him by Defendants is nondischargeable under 11 U.S.C. § 523(a)(2)(A). A creditor must prove exceptions to dischargeability for individual debts under § 523(a), including the exception for fraud, by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 291(1991). Exceptions to discharge are to be strictly construed against the creditor and liberally in favor of the debtor. *Rembert v. AT&T Universal Card Servs. (In re Rembert),* 141 F.3d 277, 281 (6th Cir. 1998).

Section 523(a)(2)(A) excepts from discharge a debt " for money, property, [or] services,. . . to the extent obtained by – (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition. . . ." In order to except a debt from discharge under this section due to false pretense or false representation, a plaintiff must prove the following elements by a preponderance of the evidence: (1) the debtor obtained money, property, services or credit through a material misrepresentation, either express or implied, that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) the creditor's reliance was the proximate cause of loss. *Rembert,* 141 F.3d at 280-81. A debtor's intent to defraud a creditor is measured by a subjective standard and must be ascertained by the totality of the circumstances of the case at hand. *Id.* at 281-82. A finding of fraudulent intent may be made on the basis of circumstantial evidence or from the debtor's "course of conduct," as direct proof of intent will rarely be available. *Hamo v. Wilson (In re Hamo),* 233 B.R. 718, 724 (B.A.P. 6th Cir. 1999). However, "if there is room for an inference of honest intent, the question of

5

nondischargeability must be resolved in favor of the debtor." *ITT Fin'l Servs. v. Szczepanski (In re Szczepanski),* 139 B.R. 842, 844 (Bankr. N.D. Ohio 1991).

For purposes of § 523(a)(2)(A), "false representations and false pretenses encompass statements that falsely purport to depict current or past facts." *Peoples Sec. Fin. Co., Inc. v. Todd (In re Todd)*, 34 B.R. 633, 635 (Bankr. W.D. Ky. 1983). "'False pretense' involves implied misrepresentation or conduct intended to create and foster a false impression, as distinguished from a 'false representation' which is an express misrepresentation." *Ozburn v. Moore (In re Moore)*, 277 B.R. 141, 148 (Bankr. M.D. Ga. 2002)(quoting *Sears Roebuck & Co. v. Faulk (In re Faulk)*, 69 B.R. 743, 750 (Bankr. N.D. Ind. 1986)).

In addition, § 523(a)(2)(A) also addresses "actual fraud" as a concept broader than misrepresentation. *See McClellan v. Cantrell*, 217 F.3d 890 (7th Cir. 2000); *Mellon Bank, N.A. v. Vitanovich (In re Vitanovich)*, 259 B.R. 873 (B.A.P. 6th Cir. 2001). "Actual fraud has been defined as intentional fraud, consisting in deception intentionally practiced to induce another to part with property or to surrender some legal right, and which accomplishes the end designed. It requires intent to deceive or defraud." *Vitanovich*, 259 B.R. at 877 (quoting *Gerad v. Cole (In re Cole)*, 164 B.R. 951, 953 (Bankr. N.D. Ohio 1993)).

In this case, Plaintiff argues that the debt owed by Defendants is a debt for property and services obtained through a material misrepresentation. Specifically, Plaintiff argues that, at the time the video security system was ordered and later installed at Game Time, Defendants did not intend to pay for the system on completion of its installation as agreed. While a mere breach of a promise to pay will not support a finding of fraud, "any debtor who does not intend to perform a contract from its inception has knowingly made a false representation." *Stifter v. Orsine (In re Orsine),* 254 B.R. 184, 188 (Bankr. N.D. Ohio 2000).

Initially, the court notes that the evidence shows that only Burns, and not his wife, requested installation of the security system and negotiated the terms of the contract with Plaintiff. The only contemporaneous documents in evidence relevant to the contract are the invoices. [Plf. Exs. 6, 7]. They do not evidence any liability on Sandra Burns's part. Both reference "per Pat" in the box for "customer's order no." [*Id.*]. The name of the customer is "Game Time Sports Pub" in the first invoice, [Plf. Ex. 6], and "Pat Burns/Game Time Sports Pub" in the second invoice, [Plf. Ex. 7]. Although Sandra Burns was generally aware of the fact that the security system was to be installed by Plaintiff, there is no evidence that she was aware of the extent of the system, its cost or the agreed payment terms. Likewise, there is no evidence that she was aware that Burns requested additional equipment to be installed. As Plaintiff has not met his burden of demonstrating any false representation made by Sandra Burns to him, she is entitled to judgment on the

6

complaint in her favor .

The court finds, however, that Burns did misrepresent that he would pay Plaintiff on completion of the installation of the security system and that he in fact never intended to do so. He does not dispute that he agreed to payment on completion. And as discussed above, the court does not credit Burns's testimony that his reason for nonpayment was that the original invoice amount was more than Plaintiff's estimate. It is clear that the business was struggling financially and that the funds simply were not available to satisfy the obligation to Plaintiff as agreed. It is also clear that Defendants' relationship with their credit union was deteriorating at the time the system was installed such that it was not likely that he would have been relying on any further extension of credit. And there is no evidence that he ever requested such credit in order to be able to pay for the system on completion of its installation.

Although it is at least possible that in early December 2006 when Burns ordered the security system he believed funds would be available and that Defendants' financial circumstances changed for the worse during the nearly two month period before the system was installed, that possibility does not change the court's analysis. Burns's conduct in allowing the installation to go forward on January 30, 2007, without informing Plaintiff of his inability to pay on its imminent completion constitutes an implied misrepresentation that he would pay as agreed. The court also believes that Burns knew that representation to be false. Although he had check writing authority, when asked for a check, he put Plaintiff off by saying that he would "order a check from the bank," which amounts to a further misrepresentation that he would pay Plaintiff as agreed.

Burns's course of conduct in dealing with Plaintiff leads this court to believe that his misrepresentations were made with the intent to deceive Plaintiff. Burns had several opportunities to make Plaintiff aware of his inability to pay as agreed before the security system and the additional equipment was installed and he chose not to do so. The court finds significant the fact that, knowing he could not pay as agreed, Burns requested that additional equipment be installed. The court also finds it significant that Defendants operated Game Time for approximately one year after the security system was installed and never made one payment to Plaintiff. Burns testified that funds were available to pay the claimed originally estimated cost of $2,000, yet the fact that no payments at all were ever made to Plaintiff undercuts the credibility of his testimony generally.

Plaintiff's testimony shows that he justifiably relied on Burns's representations regarding payment. He testified that he had paid for the equipment he installed with his own credit card, and had to engage and

pay Bobo and his son to help him install the security system, and that he could not do so unless he was going to be paid by Burns at completion of the job. Although Plaintiff installed additional equipment after not being paid on January 30, the court finds he was justified in relying on Burns's statement that he would "order a check from the bank." He was acquainted with Burns and his family and had no reason to believe that Burns's statements were untrue. And as Plaintiff credibly emphasized, he would not have undertaken the additional installation if Burns had timely complained about the first invoice or if he believed he was never going to be paid for the work already done.

Finally, the court finds that Plaintiff's reliance was the proximate cause of damages in the amount of $7,140, which amount represents the value of the security system purchased by him and the installation services performed by him.

## **CONCLUSION**

For the foregoing reasons, Plaintiff is entitled to judgment in his favor and against Defendant Patrick L. Burns in the amount of $7,140 and to a declaration that this debt is nondischargeable under 11 U.S.C. § 523(a)(2)(A). Plaintiff is also entitled to judgment in his favor and against Defendants on their counterclaims. However, Plaintiff having failed to meet his burden with respect to his claim against Defendant Sandra I. Burns, she is entitled to judgment on the complaint in her favor and against Plaintiff. A separate judgment in accordance with this Memorandum of Decision will be entered by the court.